UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLAYTON COLLINS,<br><br>            Plaintiff,<br><br>    v.<br><br>COUNTY OF ALAMEDA, et al.,<br><br>            Defendants. | Case No.  24-cv-03283-JCS<br><br>**ORDER TO SHOW CAUSE WHY CASE SHOULD NOT BE DISMISSED UNDER 28 U.S.C. § 1915** |

## I.      INTRODUCTION

Plaintiff Clayton Collins, pro se, applied to proceed in forma pauperis and the Court granted his application.  *See* Docket no. 4.  The Court now reviews the sufficiency of Plaintiff's complaint to determine whether it satisfies 28 U.S.C. § 1915(e)(2)(B).  Because the complaint does not appear to state any viable claim, Plaintiff is ORDERED TO SHOW CAUSE why the complaint should not be dismissed.  Plaintiff may file either an amended complaint or a response to this order addressing why his complaint is sufficient, no later than July 10, 2024.

## II.     ALLEGATIONS OF THE COMPLAINT[1]

Plaintiff has filed a form complaint asserting claims under 42 U.S.C. § 1983.  The complaint has numerous attachments, which the Court considers to be incorporated by reference into the complaint.  It is not entirely clear who Plaintiff seeks to name as defendants.  The caption lists as defendants:

> County of Alameda et al...
> Parties: Judge Vernon Nakahara[,] DDA Steven Dal Porto, Tracy

---

[1] Because the factual allegations of a plaintiff's complaint are generally taken as true in the context of determining whether the complaint states a claim, this section summarizes Plaintiff's allegations as if true.  Nothing in this order should be construed as resolving any issue of fact that might be disputed at a later stage of the case

United States District Court<br>Northern District of California

Wellenkamp[,] Officer Rick Coconauer [spelled Cocanaur in the complaint and attachments]

Complaint at 1. The list of parties in the body of the complaint contains only a single defendant, however, "County of Alameda ET AL...[.]" The specific claims name some of these defendants but also name defendants not included in the caption or the list of parties at the beginning of the complaint. Claim One lists a single defendant, "Alameda County Probation and Safe Task Force." Claim Two lists as defendants Deputy District Attorney ("DDA") John Jay and Officer Rick Cocanaur. Claim Three names as a defendant DDA Steven Dal Porto. Claim Four names Judge Vernon Nakahara and Tracy Wellencamp.

Plaintiff asserts civil rights claims against these defendants under 42 U.S.C. § 1983 based on events that occurred mostly in the 1990s and early 2000s. Plaintiff alleges that "[f]rom 1989-1999 [he] was employed as a Public Administrator with the City of Oakland & also the Director of a court related program working with judges, law enforcement & prosecutors of Alameda County." Complaint at 4. He alleges that in 1992, he was convicted under Penal Code section 647.6 and sentenced to thirty days in jail and three years probation in Alameda County Superior Court Case No. 364442. *Id.* 3. According to Plaintiff, the case involved "a verbal conflict between an adult female & a minor female & had nothing to do with sex as stated by the prosecuting attorney." *Id.* Plaintiff alleges that the prosecuting attorney, Amy Risner, explicitly stated to the presiding judge, the Hon. Jeffrey Tauber, that "this case has nothing to do with sex." *Id.* at 4. Nonetheless, when Plaintiff reported to Probation after his release from jail, he was told that he was required to register as a sex offender under Cal. Penal Code section 290. *Id.* at 7.

When Plaintiff sought to obtain the master file and charge sheet for Case No. 364442 to show that he did not qualify as a sex offender, around November 1993, he was told by Alameda County Court clerk that the master file and charge sheet could not be found. *Id.*at 4, 7. Plaintiff asked the Sheriff's Department to investigate the missing file but his request was denied. *Id.* at 4. He continued to try to track down the court record for many years, without success, and was told in 2010 that the records had been destroyed, though no catalogue of the record or evidence the record had been destroyed was provided. *Id.* at 4-5. Plaintiff alleges that "[w]ith the absence of the original record, a false record was created by the Alameda County Sheriff and the District

United States District Court
Northern District of California

1    Attorney's Office." *Id.* at 5. Plaintiff alleges that this "false record" was used in a series of

2    prosecutions for violation of Penal Code section 290 over the next six years. *Id.* According to

3    Plaintiff, this included a statement by DDA Steven Dal Porto that Plaintiff had been convicted in

4    1992 of child molestation. *Id.* at 9; *see also* Complaint Exhibits at ECF p. 48 (Statement of DDA

5    Dal Porto in letter to Probation that in 1992 Plaintiff was "convicted of molesting a 13 year-old

6    girl").

7         Plaintiff was arrested and convicted twice in the 1990s for violating Penal Code section

8    290 by failing to register as a sex offender. The second conviction, in Case No. 135229 ("the

9    registration case"), led to the imposition of a four-year prison sentence in 2000. Complaint

10   Exhibits at ECF p. 56 (Report and Sentence). The sentence was imposed by Judge Nakahara;

11   Tracy Wellenkamp is listed as the Deputy Clerk on the sentencing document. *Id.* Steven Dal

12   Porto, Deputy District Attorney, is listed as the prosecutor in the case. *Id.* Plaintiff alleges that

13   these criminal proceedings were conducted "without the benefit of court records . . . that would

14   have cleared [P]laintiff & stopped the prosecutions." *Id.* Instead, Plaintiff alleges, "the Alameda

15   County DA Office prepared and falsified evidence and records" to be used in the proceedings. *Id.*

16   In addition to the statement by Dal Porto quoted above, Plaintiff alleges that Dal Porto knowingly

17   permitted Officer Cocanaur to offer false testimony. *Id*. at 9. According to Plaintiff, Officer

18   Cocanaur testified that the charges in the registration case were the result of a notice from the

19   DMV to the Alameda County Safe Task Force that Plaintiff had changed his address; and that this

20   notice was generated through the use of a "special computer program within DMV that flags any

21   changes made to an address by a party who is required to register under Penal Code 290." *Id.* But

22   Plaintiff alleges the DMV has confirmed that it has "never had any such program or relationship

23   with any law enforcement agency." *Id.*

24         According to Plaintiff, he did not appeal the conviction in the registration case pursuant to

25   an agreement with the district attorney whereby Plaintiff agreed not to appeal the registration

26   conviction in return for the DA dropping sexual assault and rape charges in a separate criminal

27   case, Case No. 136321. Complaint Exhibits at ECF pp. 90-94 (trial transcript of October 5, 2000

28   proceeding before Judge Nakahara in Case Nos. 135229 and 136321 addressing Plaintiff's

United States District Court
Northern District of California

1   agreement to waive appeal rights in Case No. 135229 to obtain dismissal of 136321.)   Plaintiff

2   alleges that as to Case No. 136321, this case was brought on the basis of false charges by two

3   former employees, represented by Attorney Pamela Price, who were paid to make the accusations

4   as part of a scheme by Plaintiff's political rivals to take control of his at-risk youth program

5   (called Underground Railroad) following disputes between Plaintiff and the Deputy District

6   Attorney and with a "partner judge," the Hon. Larry Goodman, about the operation of the

7   program.  *Id.* at 5, 8.

8          Plaintiff alleges that a year before this case was brought by the Alameda District Attorney,

9   the Oakland Police Department and the Oakland DA, Norbert Chu, had "completely cleared"

10   Plaintiff of these false accusations.  *Id.; see also* Complaint Exhibits at ECF pp. 25-28

11   (Memorandum by Michael R. Berger, Esq., dated 1/11/2000, re "conversations with Norbert Chu,

12   John Jay and Russ Giunti") (documenting conversation between Berger and Chu in December

13   1999 in which Chu told Berger that he didn't remember much about the case but believed he had

14   declined to prosecute because it was "her word against his.")  Plaintiff alleges that DDA Jay

15   nonetheless initiated a prosecution based on these allegations, falsely announcing to the press that

16   more evidence had been discovered, even though that was a lie.  Complaint at 8.

17          Plaintiff alleges that although he was told that Case No. 136321 would be dismissed if he

18   agreed to forego an appeal in the registration case, court records reflected that the dismissal was

19   the result of a guilty plea, which is now also on his "rap" sheet because false facts were certified

20   by the Court Clerk, Tracy Wellenkamp, to the Department of Justice.  Complaint at 10. Plaintiff

21   has attempted to correct the court records and his rap sheet in at least two petitions filed in

22   Alameda Superior Court in 2023.  *See* Complaint Exhibits at ECF pp. 96-98. In an order dated

23   August 25, 2023, Judge Thomas Stevens recognized that the notation on Plaintiff's rap sheet for

24   Case No. 136321– "DISM-PLEA OTHER CASE" – "technically . . . is not entirely accurate,

25   because case no. 136321 was dismissed in exchange for Petitioner's agreement to waive his right

26   to appeal, rather than his plea of guilty or no contest to the charges."  *Id.* at ECF p. 97.  He further

27   found, however, that the court did not have authority to alter Plaintiff's rap sheet, which is

28   maintained by the Department of Justice.  *Id.*  Nonetheless, he ordered that the October 6, 2000

United States District Court
Northern District of California

1  minutes in Case No. 136321 be amended by adding the following sentence: "Case Number

2  136321 is dismissed in light of Defendant's waiver of his right to appeal in Case Number

3  135229." *Id.* at 97-98. Judge Stevens characterized this correction as addressing "clerical errors."

4  *Id.* at 98.

5  In response, Plaintiff filed another petition in Alameda Superior Court, on September 26,

6  2023, asserting that the mischaracterization of the dismissal in Case No. 135229 was the result of

7  intentional misconduct by DDA Dal Porto, among others, asking for a full investigation of the

8  underlying proceedings and that the convictions in all of the cases (including Case No. 364442) be

9  vacated. *Id.* at ECF pp. 99-103. In addition, on February 9, 2024, Plaintiff filed a motion in

10  Alameda Superior Court in Case No. 135229. *Id.* at ECF pp. 104-105.

11  Plaintiff asserts four claims under 42 U.S.C. § 1983. His first claim is against Alameda

12  County Probation and Safe Task Force and is based on the allegation that this defendant wrongly

13  forced him to register as a sex offender based on his 1992 conviction. Plaintiff claims that this led

14  to wrongful prosecutions for failure to register "for the next two decades" and violated his rights

15  under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments. His second claim is asserted

16  against DDA John Jay and Officer Cocanaur based on allegations that both defendants knew that

17  Plaintiff had not been convicted of a sex crime in 1992 and therefore pursued the sex offender

18  registration prosecutions without probable cause. Furthermore, Plaintiff alleges, Jay lied in

19  connection with Case No. 135229 and Officer Cocanaur fabricated evidence in connection with

20  that case, violating his rights under Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments.

21  Plaintiff's third claim is asserted against DDA Steven Dal Porto based on allegations that Dal

22  Porto gave or permitted the introduction of false evidence in Case Nos. 135229 and 136321 and

23  violated Plaintiff's rights under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments.

24  Plaintiff's fourth claim is asserted against Judge Nakahara and Clerk Tracy Wellenkamp based on

25  Judge Nakahara's conduct of Case No. 135229 (including conducting the trial without the

26  underlying court record in Case No. 364442) and Wellenkamp's failure to accurately record the

27  proceedings record (including failing to accurately reflect that there was no guilty plea in Case No.

28  136321).

United States District Court
Northern District of California

1   Plaintiff seeks injunctive relief in the form of an order directed to the Alameda Superior

2   Court to correct the record, vacate his convictions and clear his name, as well as monetary

3   damages for being forced to register as a sex offender and for being wrongly incarcerated for

4   failure to do so.

5   **III.   ANALYSIS**

6   **A.   Legal Standards Under 28 U.S.C. § 1915 and Rule 12(b)(6)**

7   Where a plaintiff is found to be indigent under 28 U.S.C. § 1915(a)(1) and is granted leave

8   to proceed in forma pauperis, courts must engage in screening and dismiss any claims which:

9   (1) are frivolous or malicious; (2) fail to state a claim on which relief may be granted; or (3) seek

10  monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B); *see*

11  *Marks v. Solcum*, 98 F.3d 494, 495 (9th Cir. 1996).

12  To state a claim for relief, a plaintiff must make "a short and plain statement of the claim

13  showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Further, a claim may be

14  dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6);

15  *see also Diaz v. Int'l Longshore and Warehouse Union, Local* 13, 474 F.3d 1202, 1205 (9th Cir.

16  2007).  In determining whether a plaintiff fails to state a claim, the court takes "all allegations of

17  material fact in the complaint as true and construe[s] them in the light most favorable to the non-

18  moving party."  *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975

19  (9th Cir. 2007).  However, "the tenet that a court must accept a complaint's allegations as true is

20  inapplicable to legal conclusions [and] mere conclusory statements," *Ashcroft v. Iqbal*, 556 U.S.

21  662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), and courts "do not

22  necessarily assume the truth of legal conclusions merely because they are cast in the form of

23  factual allegations." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1034 (9th Cir. 2010) (internal

24  quotation marks omitted).  The complaint need not contain "detailed factual allegations," but must

25  allege facts sufficient to "state a claim to relief that is plausible on its face."  *Id*. at 678 (citing

26  *Twombly*, 550 U.S. at 570).

27  Where the complaint has been filed by a pro se plaintiff, courts must "construe the

28  pleadings liberally . . . to afford the petitioner the benefit of any doubt."  *Hebbe v. Pliler*, 627 F.3d

338, 342 (9th Cir. 2010). "A pro se litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies in the complaint could not be cured by amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987), superseded on other grounds by statute, as recognized in *Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) (en banc). Further, when it dismisses the complaint of a pro se litigant with leave to amend, "the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." *Id.* (quoting *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992)). "Without the benefit of a statement of deficiencies, the pro se litigant will likely repeat previous errors." *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988) (quoting *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987)).

### B.     Timeliness of Claims

For actions under 42 U.S.C. § 1983, courts apply the forum state's statute of limitations for personal injury actions, along with the forum state's law regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent with federal law. *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir. 1999). In California, the statute of limitations for personal injury claims is two years. Cal. Civ. Proc. Code section 335.1. All of the conduct upon which Plaintiff's claims are based upon, however, occurred over two decades ago. Thus, Plaintiff's claims are timely only if he can establish that they are subject to tolling.

The Ninth Circuit has described California law on equitable tolling as follows:

> Equitable tolling under California law " 'operates independently of the literal wording of the Code of Civil Procedure' to suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness." *Lantzy v. Centex Homes*, 31 Cal.4th 363, 2 Cal.Rptr.3d 655, 660, 73 P.3d 517, 523 (2003) (citation and internal quotation marks omitted). The purpose of California's equitable tolling doctrine "is to soften the harsh impact of technical rules which might otherwise prevent a good faith litigant from having a day in court." *Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1137(9th Cir.2001) (en banc) (quoting *Addison v. State*, 21 Cal.3d 313, 146 Cal.Rptr. 224, 225, 578 P.2d 941, 942 (1978)) (internal quotation marks omitted). Thus California courts apply equitable tolling "to prevent the unjust technical forfeiture of causes of action, where the defendant would suffer no prejudice." *Lantzy*, 2 Cal.Rptr.3d at 660, 73 P.3d at 523. Application of California's equitable tolling doctrine "requires a balancing of the injustice to the plaintiff occasioned by the bar of his claim against the effect upon the

important public interest or policy expressed by the . . . limitations statute." *Id*. at 660, 73 P.3d at 524 (quoting *Addison*, 146 Cal.Rptr. at 228, 578 P.2d at 945) (internal quotation marks omitted) (omission in original).

Here, Plaintiff's allegations indicate that he has not been able to obtain relief in California state court, despite his ongoing efforts. He does not, however, allege facts that indicate that he was prevented from asserting the civil rights claims in this case within the applicable limitations period due to any technicality, or that the injustice to Plaintiff occasioned by the bar of his claim outweighs the important public interest expressed by the limitations statute. Therefore, as currently pled, the Court finds that all of Plaintiff's claims are untimely.

### C.   Judicial Immunity

In his fourth claim, Plaintiff names Judge Nakahara and Court Clerk Wellenkamp as defendants. To the extent Plaintiff seeks monetary damages, these claims are barred on the basis of judicial immunity.

Judges and those performing judge-like functions are absolutely free from liability for damages for acts performed in their official capacities. *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir.1986) (en banc). Judicial immunity applies no matter how "erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." *Id.* at 1074 (citing *Cleavinger v. Saxner*, 474 U.S. 193 (1985) (quotations omitted)). Judicial immunity is not affected "by the motives with which [the Judge's] judicial acts are performed." *Id*. at 1077. Thus, intent does not play a role in the immunity analysis. *Id.* "A judge will not be deprived of immunity because the action [they] took was in error, was done maliciously, or was in excess of [their] authority[.]" *Stump v. Sparkman*, 435 U.S. 349, 356–57, (1978) (quotations omitted). However, "[a] judge lacks immunity where he acts in the 'clear absence of all jurisdiction," . . . , or performs an act that is not 'judicial' in nature." *Ashelman*, 793 F.2d at 1075 (citations omitted). The same standards apply to judicial employees, such as court clerks. *Ricotta v. State of California*, 4 F.Supp.2d 961, 972 (S.D. Cal. 1998).

Plaintiff's allegations in this case establish that the conduct about which Plaintiff complains on the part of Judge Nakahara and Clerk Wellenkamp involved judicial acts. Nor has Plaintiff alleged facts supporting an inference that their acts were taken in a clear absence of

1    jurisdiction.  Therefore, Plaintiff's claims for money damages as to these defendants are barred.

2        **D.**    **Prosecutorial Immunity**

3          The Supreme Court has held that under Section 1983, as at common law, a prosecutor is

4    entitled to absolute immunity with respect to conduct that is "intimately associated with the

5    judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 427, 430-431 (1976)

6    (reserving the question of whether prosecutors enjoy absolute immunity "for those aspects of the

7    prosecutor's responsibility that cast him in the role of an administrator or investigative officer

8    rather than that of advocate."). Such conduct includes, for example, "appearing before a judge and

9    presenting evidence in support of a motion for a search warrant." *Burns v. Reed*, 500 U.S. 478,

10   491–92 (1991); see also *Braunstein v. Roger*, No. 3:10-CV-00051-ECR, 2010 WL 3025221, at *3

11   (D. Nev. May 20, 2010), report and recommendation adopted, No. 3:10-CV-00051-ECR, 2010

12   WL 3025214 (D. Nev. July 30, 2010) (Observing that "[a] state official sued in his or her personal

13   capacity may be entitled to assert common-law or absolute immunities" and dismissing claims

14   asserted against district attorney sued in individual capacity on the basis of prosecutorial

15   immunity); *Mackenzie v. Hutchens*, No. LA CV 12-00584-VBF-J, 2013 WL 8291423, at *2 (C.D.

16   Cal. Sept. 9, 2013), judgment entered, No. CV 12-00584-VBF-JCC, 2013 WL 12066015 (C.D.

17   Cal. Sept. 9, 2013), and aff'd, 623 F. App'x 483 (9th Cir. 2015) (noting that the court had

18   previously dismissed claims against district attorney sued in official and personal capacity); *see*

19   *also Mackenzie*, dkt. 9 (reflecting that dismissal was based on prosecutorial immunity).

20         Here, Plaintiff's claims against DDA Dal Porto and Jay are based on conduct that is

21   "intimately associated with" the criminal proceedings in the cases discussed above.  Therefore,

22   those defendants are entitled to absolute immunity from Plaintiff's claims against them.

23       **E.**    ***Rooker-Feldman* Doctrine**

24         The *Rooker-Feldman* doctrine provides that federal courts do not have subject matter

25   jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court

26   judgments rendered before the district court proceedings commenced and inviting district court

27   review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544

28   U.S. 280, 284 (2005). Even where the complaint does not "directly contest the merits of a state

court decision" the *Rooker-Feldman* doctrine "prohibits a federal district court from exercising subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment." *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 859 (9th Cir. 2008). In other words, "[i]f a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker–Feldman* bars subject matter jurisdiction in federal district court." *Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003); *see also Doe v. Mann*, 415 F.3d 1038, 1043 (9th Cir. 2005) ("[A] federal district court dealing with a suit that is, in part, a forbidden de facto appeal from a judicial decision of a state court must refuse to hear the forbidden appeal. As part of that refusal, it must also refuse to decide any issue raised in the suit that is 'inextricably intertwined' with an issue resolved by the state court in its judicial decision.").

In this case, Plaintiff asks the Court to vacate at least three state court convictions and award relief that was denied by the Alameda Superior Court as recently as 2023.[2]  Because his claims constitute a de facto appeal of the state court convictions, they are barred under the *Rooker-Feldman* doctrine.

### F.    Probation and Safe Task Force

In naming the Alameda County Probation and Safe Task Force as a defendant, Plaintiff has not named a proper defendant. A claim for civil rights violations pursuant to 42 U.S.C. § 1983 requires a "person" who acted under color of state law. 42 U.S.C. § 1983. Individual officers are considered "persons" within the meaning of § 1983, as are local governmental units, such as counties or municipalities. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70, (1989). However, municipal departments and sub-units are generally not considered "persons" within the meaning of § 1983. *Vance v. County of Santa Clara*, 928 F.Supp. 993, 995-96 (N.D. Cal. 1996) (holding that "naming a municipal department as a defendant is not an appropriate means of pleading a § 1983 action against a municipality," and dismissing the Santa Clara Department of

---

[2]It is not clear whether the Superior Court has ruled on Plaintiff's February 2024 petition, discussed above. Regardless, the relief Plaintiff requests relates to issues that have already been raised and decided by the Alameda County Superior Court.

1    Corrections from the action). Therefore, Plaintiff fails to state a claim as to the Alameda County

2    Probation and Safe Task Force.

3    **IV.    CONCLUSION**

4         For the reasons discussed above, Plaintiff is ORDERED TO SHOW CAUSE why this case

5    should not be dismissed.   Plaintiff may respond by filing either an amended complaint that

6    addresses the deficiencies discussed above or a response that addresses why his current complaint

7    is sufficient.  Plaintiff's response shall be filed by July 10, 2024.   If Plaintiff does not file a

8    response by that date, the case will be reassigned to a United States district judge with a

9    recommendation that it be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).  Any amended

10   complaint must include the caption and civil case number used in this order (24-cv-3283) and the

11   words FIRST AMENDED COMPLAINT on the first page.  Because an amended complaint

12   completely replaces the previous complaint, any amended complaint may not incorporate claims

13   or allegations of Plaintiff's original complaint by reference, but instead must include all of the

14   facts and claims Plaintiff wishes to present and all of the defendants he wishes to sue.

15        Plaintiff, who is not represented by counsel, is encouraged to consult with the Federal Pro

16   Bono Project's Legal Help Center in either of the Oakland or San Francisco federal courthouses

17   for assistance.  The San Francisco Legal Help Center office is located in Room 2796 on the 15th

18   floor at 450 Golden Gate Avenue, San Francisco, CA 94102.  The Oakland office is located in

19   Room 470 S on the 4th floor at 1301 Clay Street, Oakland, CA 94612.  Appointments can be made

20   by calling (415) 782-8982 or emailing federalprobonoproject@sfbar.org.  Lawyers at the Legal

21   Help Center can provide basic assistance to parties representing themselves but cannot provide

22   legal representation.

23        **IT IS SO ORDERED.**

24

25   Dated:  June 11, 2024

26   _____

27   JOSEPH C. SPERO
     United States Magistrate Judge

28

*United States District Court*
*Northern District of California*